IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

| | | |
|---|---|---|
| HALLIBURTON ENERGY SERVICES, INC., | § § § | |
| Plaintiff, | § § § | Civil Action No. MO-09-CV-053 |
| v. | § § | |
| DOWNHOLE FLUIDICS, INC., | § § | |
| Defendant. | § | |

## OPPOSITION TO DOWNHOLE FLUIDICS, INC.'S MOTION TO COMPEL

Plaintiff Halliburton Energy Services, Inc. has aggressively pursued and responded to discovery in this action and files this Opposition to Defendant Downhole Fluidics, Inc.'s ("DFI") Motion to Compel (Dkt. No. 45) ("Motion"). In view of DFI's unwillingness to (1) answer reasonable interrogatories to help Halliburton understand the bases for DFI's many counterclaims and (2) streamline the case to weed out baseless claims, and in view of Halliburton's diligence in investigating, gathering, and producing documents, the Court should deny DFI's motion to compel.

**I.   Background**

Soon after the Court's Scheduling Order on July 23, 2009, Halliburton served its first set of requests for production and interrogatories on August 12, 2009 in an effort to determine the factual bases for DFI's numerous counterclaims identified in DFI's Motion. Although DFI has produced some documents, it has utterly failed to respond to interrogatories seeking the factual basis for its claims, including trade secret misappropriation and patent infringement. (Ex. 1 – DFI's Answers to Halliburton's First Interrogatories.) Halliburton demanded supplementation, which DFI has done three

times now to no avail. (Exs. 2, 3, and 4 – Supplemental Answers to Interrogatories.) DFI remains unwilling to explain the basis for many of its claims. For example, in response to all interrogatories regarding patent infringement, DFI states that "DFI has not pled patent infringement, either literal or under the doctrine of equivalents." (Ex. 4 at 4 (answer to interrogatory no. 13).) In fact, DFI has pled patent infringement because it denied Halliburton's claim for declaratory judgment that Halliburton does not infringe. *See* First Amended Complaint (Dkt. No. 23) at ¶ 78 (asserting that Halliburton does not infringe any claim of DFI's patents); DFI's Second Amended Answer (Dkt. No. 31) at ¶ 78 ("DFI denies the allegations in paragraph 78.").

DFI in response served 135 requests for production. (Ex. 5 – DFI's Request for Production.) Halliburton timely served its objections and responses on DFI. (Ex. 6 - Resonse to DFI RFP.) Halliburton has been working to recover electronically stored information as well as physical documents in response to the vast number of requests DFI propounded. For example, Halliburton has interviewed numerous people to determine their relevance to the facts of the case and to locate documents and develop a meaningful list of custodians. Halliburton quickly learned that its document production was going to consist primarily of electronically stored information ("ESI"). Thus, Halliburton developed and implemented an electronically stored information search protocol. Halliburton notified DFI of the protocol it intended to implement on October 16, 2009, requesting DFI's comments and/or approval within a week. (Ex. 7 – Letter to DFI re ESI Protocol.) Having received no response from DFI, Halliburton sent a follow-up letter on October 26, 2009. (Ex. 8 – Letter to DFI re ESI Protocol.) DFI finally responded on November 10, 2009. (Ex. 9 – Letter from DFI re DFI Discovery Deficiencies.) Thus,

DFI created a delay of almost one month due to its seeming indifference to review the search protocol.

In the midst of Halliburton's document production effort, on October 1, 2009, DFI filed its Rule 26 disclosure. (Ex. 10 – DFI Rule 26 Disclosure.) DFI's disclosure identified a shocking **232** "Halliburton Related Employees" who were "likely to have discoverable information" under Rule 26. (*Id.* at 2-23.)

Despite DFI's efforts, Halliburton promptly implemented its ESI search protocol. After narrowing down approximately 1 terabyte of electronically stored information to approximately 50-60 gigabytes, Halliburton began reviewing the documents for privilege and production. Halliburton produced the first set of these documents on December 14, 2009 and has reviewed approximately 40% of the electronically stored information. On December 15, 2009, Halliburton produced supplemental responses to DFI's requests for production that identified the documents that are responsive to each request for production. (Ex. 11 – Halliburton's Supplemental Responses.) At present, Halliburton expects to have produced all non-privileged electronically stored information by the end of December.

Halliburton has also produced non-electronically stored information that it has recovered. On October 28, 2009, Halliburton produced its first set of documents, consisting of 996 pages. (Ex. 12 – 10/28/09 Doc Production Letter.) Subsequently, on November 19, 2009, Halliburton produced a second set of documents, consisting of 106 pages. (Ex. 13 – 11/19/09 Doc Production Letter.) On November 23, 2009, Halliburton produced the drawings of its PULSONIX® TF tool. On December 3, 2009, Halliburton produced spreadsheets containing every invoice for all tools at issue in the case from the

products' inception in 2002 until a week before the spreadsheets were produced in November 2009. (Ex. 14 – 12/3/09 Doc Production Letter.) On December 14, 2009, Halliburton produced the first of its rolling productions of electronically stored information. (Ex. 15 – 12/14/09 Doc Production Letter.)

## II.    Argument

DFI's Motion asks this Court to compel Halliburton to produce documents in response to DFI's 135 requests for production. But DFI makes no effort to justify the contents of those requests or to justify the number of requests.

Halliburton has objected to most of DFI's requests for various reasons, including the fact that they are overly broad and unduly burdensome, seek information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and seek privileged information, among a host of other objections. Halliburton's objections are identified in response to each specific request in Exhibit 6. Those objections and responses are incorporated by reference in their entirety into this opposition.

As can be seen from the facts outlined above, Halliburton has worked diligently to sift through the large number of requests for production and the 232 Halliburton Related Employees DFI identified to discern what information is actually relevant to the case at hand and to produce that information. Halliburton continues to work diligently to produce documents and expects to complete its production by the end of December.

Given that the expert deadline has been extended until January 31, 2009, there is no reason to compel Halliburton to do that which it will have done by the end of December. In contrast with DFI's (1) failure to simply outline the factual basis for its claims and (2) naming of 232 persons having discoverable information, Halliburton has

acted in good faith and is producing information as fast as can be expected under the circumstances.

DFI claims to have completed its production and chastises Halliburton for its delay. But, as can be seen from DFI's Rule 26 disclosures, DFI views itself as having seven persons with discoverable information and Halliburton as having 232 such persons. Obviously, there is a far more significant burden on Halliburton.

Moreover, DFI's complaints have been addressed. DFI identifies two main issues in its Motion. First, DFI complains that Halliburton has produced documents "without attributing them to any specific request for production." (Motion at 3.) Halliburton has produced supplemental responses that resolve this issue. (Ex. 11.) Second, DFI complains that Halliburton has not produced "financial and/or damage related information for the tools in question." (Motion at 3, 4.) To the contrary, Halliburton has produced every invoice for all tools in question for the entire history of the tools' existence from 2002 to the present. (Ex. 14.) Therefore, Halliburton is acting as quickly as possible to provide the information that DFI believes it needs.

Finally, DFI's Motion is all the more surprising in the face of its failure to comply with reasonable interrogatories requesting that it explain the basis for its numerous claims. Halliburton suspects that much of the expensive document production in which it is engaged is wasted effort in view of the fact that DFI has no reasonable basis for its claims.

DFI will not articulate any factual or legal basis for its patent and trade secret claims, yet it seeks discovery of technical information concerning Halliburton's products. (Ex. 3 at 7 (answering Interrogatory No. 7 seeking specific identification of trade secrets

Halliburton misappropriated with generic statement that Halliburton has misappropriated "DFI's research, development, product design and processes"); Ex. 4 at 4 (answering Interrogatory No. 4 seeking the basis for DFI's assertion of patent infringement with "DFI has not pled patent infringement").)

DFI claims that its patent license agreement entitles it to royalties on Halliburton's own independently-developed products even though those products are admittedly not covered by DFI's patents. (Ex. 4 at 3-4.)

DFI is pursuing a claim for copyright infringement under federal copyright law even though it has no registered copyrights and therefore cannot bring such a claim. (17 U.S.C. § 411 ("[N]o civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."); Ex. 1 at 9 (admitting that DFI has no registered copyrights).)

Halliburton has worked with DFI in good faith to eliminate claims that cannot be viable, but DFI so far has refused to dismiss claims that it must know are baseless.

In view of DFI's unwillingness to answer reasonable interrogatories to help Halliburton understand the bases for DFI's many counterclaims and streamline the case and in view of Halliburton's diligence in investigating, gathering, and producing documents, the Court should deny DFI's motion to compel.

### III.   Conclusion

Halliburton respectfully requests that the Court deny DFI's Motion.

Dated:  December 15, 2009             Respectfully submitted,


By   /s/ Douglas R. Wilson
     Leslie V. Payne
     State Bar No. 00784736
     HEIM, PAYNE & CHORUSH, L.L.P.
     Chase Tower, Suite 6710
     600 Travis Street
     Houston, Texas 77002-2912
     Telephone:  (713) 221-2000
     Facsimile:   (713) 221-2021

     Douglas R. Wilson
     State Bar No. 24037719
     HEIM, PAYNE & CHORUSH, L.L.P.
     9442 Capital of Texas Hwy North
     Plaza 1 Suite 500-146
     Austin, TX 78759
     (512) 267-1663

     Harper Estes
     State Bar No. 00000083
     Steven C. Kiser
     State Bar No. 11538550
     LYNCH, CHAPPELL & ALSUP
     A Professional Corporation
     300 N. Marienfeld, Suite 700
     Midland, Texas 79701
     Telephone: (432) 683-3351
     Facsimile: (432) 683-2587


     ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

       I hereby certify that on the 15th day of December, 2009, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

    Joe W. Meyer
    Nathan A. Steadman
    Meyer, Knight & Williams, LLP
    8100 Washington Ave., Suite 1000
    Houston, Texas 77007
    jwm@mkwlaw.com
    nas@mkwlaw.com

                                              /s/ Douglas R. Wilson
                                                Douglas R. Wilson