IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

| | | |
|---|---|---|
| HALLIBURTON ENERGY SERVICES, INC., | § § § | |
| Plaintiff, | § § | |
| | § | Civil Action No. MO-09-CV-053 |
| v. | § § | |
| DOWNHOLE FLUIDICS, INC., | § § | |
| Defendant. | § § | |

**DEFENDANT/COUNTER-PLAINTIFF DOWNHOLE FLUIDICS, INC.'S
REQUEST FOR PRODUCTION TO PLAINTIFF/COUNTER-DEFENDANT
<u>HALLIBURTON ENERGY SERVICES, INC.</u>**

TO:  Plaintiff, Halliburton Energy Services, Inc., by and through its attorney of record, Leslie V. Payne and Douglas R. Wilson, Heim, Payne & Chorush, LLP, 600 Travis, Suite 6710, Houston, Texas 77002.

Defendant/Counter-Plaintiff DOWNHOLE FLUIDICS, INC., requests that the Plaintiff/Counter-Defendant HALLIBURTON ENERGY SERVICES, INC. produce the following things pursuant to Rule 34 of the Federal Rules of Civil Procedure for inspection and copying the following documents and tangible things (as they are kept in the ordinary course of business or segregated according to each request) within Plaintiff's possession, custody or control at the office of Meyer, Knight & Williams, L.L.P., 8100 Washington Avenue, Suite 1000, Houston, Texas 77007, on or before thirty-one (31) days from the receipt of this request or as otherwise required by the Federal Rules of Civil Procedure.

Respectfully submitted,

 /s/ Joe Meyer_____
Joe W. Meyer
Texas Bar No. 13992400/Fed. ID No. 9704
Nathan A. Steadman

Texas Bar No. 19089450/Fed. Id. No. 13113
8100 Washington Ave., Suite 1000
Houston, Texas 77007
Tel 713.868.2222
Fax 713.868.2262
**ATTORNEY IN CHARGE FOR DEFENDANT/
COUNTER-PLAINTIFF, DOWNHOLE
FLUIDICS, INC.**

**OF COUNSEL:**
MEYER, KNIGHT & WILLIAMS, LLP
8100 Washington Avenue, Suite 1000
Houston, Texas 77007
Tel 713.868.2222
Fax 713.868.2262

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of August, 2009, a true and correct copy of Defendant/Counter-Plaintiff Downhole Fluidics, Inc.'s Request for Production to Plaintiff/Counter-Defendant was served via U. S. Regular Mail or e-mail transmission to all counsel of record as follows:

Andrew Harper Estes
Steven C. Kiser
LYNCH, CHAPPELLE & ALSUP, PC
300 N. Marienfeld #700
Midland, Texas 79701

Douglas R. Wilson
Leslie V. Payne
HEIM, PAYNE & CHORUSH, LLP
600 Travis, Suite 6710
Houston, Texas 77002

   /s/ Joe Meyer                
Joe W. Meyer

2

## INSTRUCTIONS

1.    The following Requests for Production are to be answered separately and fully, by furnishing all documents in your possession, custody or control, including all documents to which you have a superior right to compel from a third party, such as your agent, employee, authority, or representative pursuant to Rule 34(b) FRCP.

2.    A document is deemed to be within a person or entities care, custody, or control, if such person or entity has ownership, possession, or custody of the document or thing, or copy thereof, or the right or ability to secure the document or copy thereof from any other person, public or private entity having physical possession thereof.

3.    You are under a duty to supplement your responses to these Requests for Production pursuant to Rule 26(e) FRCP after you have completely responded, if you obtain information or documents which cause a reasonable belief that your previous response is now incorrect, incomplete or no longer true, and the circumstances are such that failure to amend the response is in substance misleading.

4.    If you supplement your responses to this Request for Production, you must do so as soon as practical but not less than thirty (30) days prior to the beginning of trial unless the Court, upon your motion, finds that a good cause exists for permitting later supplementation.

5.    If you fail and/or refuse to fully respond to these Requests for Production, the Court may enter an Order compelling you to do so and also assess reasonable attorney's fees and expenses incurred in obtaining the Order.

6.    Failure to respond to these Requests for Production within the time allowed may result in the entry of a judgment against you or other sanctions by the Court as provided by the FRCP.

7.    If you object to part of a Request for Production and refuse to respond to that part, then state precisely your objection and respond to the best of your ability to the remaining portion of that request.

8.    If a privilege or work product immunity is claimed as a ground for not responding to any requests in whole or in part, describe the factual base for the claim of privilege or work product immunity in sufficient detail so as to permit the Court to ascertain the validity of such claim.

9.    If a privilege or work product immunity is claimed as a ground for not responding to any request in whole or in part, you must identify the documents and/or information withheld by listing the date, author, nature of document, brief description of its contents and the basis for asserting your claim of privilege or immunity.

3

10.    The original of all documents or records shall be produced and shall be identified by the number of the request to which they are responsive.

11.    If the answer to any Request for Production may be derived or ascertained from your business record, and the burden of deriving the answer would be substantially the same for Defendants and you, you must specify the records from which the answer may be obtained. However, that specification must be in sufficient detail to allow Plaintiffs and their attorney to locate and identify the answers as easily as you can, and must include reasonable opportunity to examine, audit or inspect such records and to make copies, compilation, abstracts or summaries.

12.    If you object to part of a Request for Production and refuse to answer that part, state precisely your objections and answer to the best of your ability your remaining portion of that Request for Production.

## DEFINITIONS

1.    The terms "you," "your", "DFI," and "Defendant" refer to Defendant Downhole Fluidics, Inc. and all its divisions, departments, domestic and foreign subsidiaries, branches, parents, affiliates, domestic and foreign subsidiaries of parents, affiliates, partners, predecessors-in-interest, successors-in-interest, present and former officers, directors, managers, employees, consultants, agents, attorneys, accountants, representatives, entities acting in joint-venture or partnership relationship with DFI, and all other persons or entities purporting to act on behalf of or in concert with DFI or any of its divisions, departments, subsidiaries, parents, affiliates, partners, branches, predecessors-in-interest, successors-in-interest, present and former officers, directors, managers, employees, consultants, agents, attorneys, accountants, and representatives.

2.    The terms "Halliburton," "HES," and "Plaintiff" mean Plaintiff Halliburton Energy Services, Inc. and all its divisions, departments, domestic and foreign subsidiaries, branches, parents, affiliates, partners, predecessors-in-interest, successors-in-interest, present and former officers, directors, managers, employees, consultants, agents, attorneys, accountants, representatives, and all other persons or entities purporting to act on behalf of or in concert with Halliburton or any of its divisions, departments, subsidiaries, parents, affiliates, partners, branches, predecessor-in-interest, successor-in-interest, present and former officers, directors, managers, employees, consultants, agents, attorneys, accountants, and representatives, including without limitation, Halliburton Energy Services, Inc.

3.    The term "Complaint" refers to the live pleadings filed by Halliburton, including the First Amended Complaint filed by Halliburton in case no. MO-09-CV-053, as well as any other amendment complaints filed by Halliburton in the future.

4

4.    The term "Counterclaim" refers to the Answer filed by DFI on July 15, 2009 in Case No. MO-09-CV-053.

5.    The term "Patents-in-Suit" refers to:

    (a)    U.S. Patent No. 5,135,051;
    (b)    U.S. Patent No. 5,165,438;
    (c)    U.S. Patent No. 5,228,508; and
    (d)    U.S. Patent No. 5,893,383.

6.    The terms "License Agreement" refers to the License Agreement between DFI and Halliburton entered into on or around January 26, 2002.

7.    The term "Relevant Products" refers to all versions of any product, system, services, apparatus, method, or procedure made, used, sold, offered for sale, or licensed by you that relate to DFI's oil and gas well power-operated stimulation tools and oil and gas well services – *i.e.*, cleaning out well bores and treatment of well bore for stimulation of the wells.

8.    The term "Halliburton Marks" refers to the trade marks and service marks by :

    (a)    U.S. Trademark Registration No. 2,575,819;
    (b)    U.S. Trademark Registration No. 2,575,840;
    (c)    U.S. Trademark Registration No. 2,721,072; and
    (d)    U.S. Trademark Registration No. 3,045,487.

9.    The term "Pulsonix Marks" refers to the trade marks and services marks covered by:

    (a)    U.S. Trademark Registration No. 2,772,426; and
    (b)    U.S. Trademark Registration No. 3,216,415.

10.    The term "communication means the transmittal of information of any kind (including, without limitation, facts, ideas, inquires, or opinions) by any means, and includes, without limitation, any transfer or exchange between two or more persons or entities of any information whether by document or oral means, including but not limited to, personal conversation, correspondence, telephone calls, electronic mail and telegrams. This definition also includes all communications for which you claim privilege.

11.    The term  "document" or "documents" shall mean, but not be limited to, any printed, typewritten, or handwritten item or reproduction thereof by any means of electronic storage of information that is within your or your attorney's, accountant's, and any of their agent's possession, custody, or control, including, but not limited to, writings, letters, correspondence, notes, telegrams, telexes, memoranda, records, books of account, ledgers, balance sheets, diaries, calendars, journals, minutes, contracts, drafts of accounts, insurance

policies, insurance claims, applications for insurance policies, drawings, graphs, charts, photographs, records of telephone or personal conversations or conferences, inter-office communications, microfilm, tape recordings, bulletins, circulars, personal financial statements or records of any kind, or schedules, pamphlets, studies, surveys, appraisals, work sheets, appraisal sheets or reports, catalogues, invoices, checks, vouchers, newspaper inserts, computer listings, publications, voice recordings, statistical computations, computer tapes and printouts, microfiche, all agreements, analyses, appointment records, articles, arithmetical compilations, audio recordings, whether transcribed or not, balance sheets, bills, bills of lading, blanks, booklets, books, books of account, bulletins, cablegrams, certificates, charters, charts, checks, communications, compilations, computer cards, computer printouts, computer programs, computer readouts, computer tapes, contracts data compilations from which information can be obtained or translated through detection devices, sales data, delivery records, diaries disks, drafts, drafts of documents, drawings, entries, envelopes, estimates, expense reports, field notes, films, financial analyses, financial statements, forms, instruments, intra-office and inter-office communications, invoices, itemizations, journals, letters, licenses, magazines, magazines, magnetic tapes, manuals, maps, meeting reports, memoranda, memoranda messages (including reports, notes and memoranda of telephone conversations and conferences), of all conversations including telephone calls, minutes of all other communications of any type including interoffice and intra-office communications, newspapers, notes, notices, order forms, orders, opinions, payroll records, permits, photocopies, photographs, planographs, plans, press releases, prospectuses, publications, punch cards, purchase orders, questionnaires and surveys, receipts, recordings, records, records of account, reports, requisitions, resolutions, sketches, specifications, statements, statistical records, tapes, telegrams, texts, time records, training manuals, training materials, transcripts, valuations, video recordings, warehouse receipts, writings, or work papers and copies or reproductions of all of the foregoing upon which notations and writings have been made and which do not appear on the original, notes or summaries prepared or related to any of the foregoing and each copy of the foregoing which is not identical because of marginal notations or otherwise in your possession or control of the control of your attorney, former attorney(s), employees, former employees, agents, former agents, servants or relatives.

12.    The term "thing" refers to any tangible object or information embodied in a tangible object other than a document and includes objects of every kind and nature including, but not limited to, devices, computer data, computer programs, prototypes, models, and specimens.

13.    The terms "person," "entity, "and "entities" include natural persons, proprietorships, partnerships, firms, corporations, public corporations, municipal corporations, governments (including foreign national governments, the government of the U.S. or any state or local government), all departments and agencies thereof, any governmental agencies of any country, political subdivisions, groups, associations, or organizations.

14.    The terms "and," "and/or", and "or" shall be construed to mean "and" or "or" in such a manner as to encompass the broadest possible scope of requested documents, things, or

information, not so as to permit the option of providing some requested documents, things, or information instead of others.

15.    The term "any shall be construed to mean any and all requested documents, things, or information inclusively, and not so as to permit the option of providing some requested documents, things, or information instead of others.

16.    The singular form of an noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun so used, and vice versa; the use of the masculine form of a pronoun shall be considered to include within its meaning the feminine form of the pronoun so used, and vice versa; and the use of any tense of any verb shall be considered to include within its meaning all other tenses of the verb so used.

17.    The term "relating to," "reflecting," or "referring to," "concerning," and "evidencing" unless otherwise indicated mean including, evidencing, concerning, summarizing, demonstrating, constituting, relating to, reflecting, referring to, containing, studying, analyzing, considering, explaining, mentioning, showing, discussing, describing, commenting upon, resulting from, prepared for or used in connection with.

18.    The term "since" when used with respect to a date includes the date and all time subsequent.

19.    The terms "infringe" and "infringement" refer to direct infringement, indirect infringement, contributory infringement, inducements, literal infringement, and/or infringement under the doctrine of equivalents.

20.    The definitions set out herein are not intended to and do not define the scope of terms set forth in the Patents-in-Suit, nor are the definitions inclusive off all possible interpretations of terms set forth in the Patents-in-Suit.

21.    "HES oscillating tool(s)" means any oscillating tool incorporating the DFI technology/tool (including the PULSONIX 200) and any HES oscillating tool 'developed' by HES including but not limited to the PULSONIX TF, and any other oscillating tool used by HES.

22.    "DFI oscillating tool" means the tool used by HES which is the subject of the License Agreement.

23.    "SPE" means society of petroleum engineers.

24.    "IPTC" means international petroleum technology conference.

25.    "Halliburton Price Book" means the standard list of prices/costs for equipment and services given to HES customers.

## REQUEST FOR PRODUCTION

1.     All documents, including but not limited to electronic mail, discussing, mentioning, or relating to the Licensing Agreement.

**RESPONSE:**

2.     All documents, including but not limited to electronic mail, discussing, mentioning, or relating to royalties paid by HES to DFI.

**RESPONSE:**

3.     All documents, including but not limited to invoices or electronic mail, discussing, mentioning or relating to all HES jobs where the DFI oscillating tool has been used from January 1, 2002 until the present.

**RESPONSE:**

4.     All documents, including but not limited to invoices or electronic mail, discussing, mentioning, or relating to all HES jobs where HES has used any oscillating tool.

**RESPONSE:**

5.     All documents, including but not limited to electronic mail, discussing, mentioning, or relating to financial records (invoices, billings, payments received, job costs, internal accounting records related to the job), related to the DFI oscillating tool.

**RESPONSE:**

6.     All documents, including but not limited to electronic mail, discussing, mentioning, or relating to the development and/or use of the DFI oscillating tool.

**RESPONSE:**

7.     All documents, including but not limited to electronic mail, discussing, mentioning, or relating to HES jobs where the DFI oscillating tool has been used (whether it be domestically in the United States or outside of the United States).

**RESPONSE:**

8.     All documents, including but not limited to electronic mail, discussing, mentioning, or relating to HES' income stream from jobs upon which DFI's oscillating tool was used, including but not limited to gross receipts from the customer, cost of labor, cost of

8

equipment, miscellaneous costs, net profits, mark ups, royalties paid, and cost of purchase of the DFI oscillating tool.

**RESPONSE:**

9.      All documents, including but not limited to electronic mail, discussing, mentioning or relating to all HES jobs where any HES oscillating tool has been used from the date of the Licensing Agreement until the present.

**RESPONSE:**

10.     All documents, including but not limited to electronic mail, discussing, mentioning, or relating to financial records (invoices, billings, payments received, job costs, internal accounting records related to the job), related to any HES oscillating tool.

**RESPONSE:**

11.     All documents, including but not limited to electronic mail, discussing, mentioning, or relating to the development and/or use of any HES oscillating tool.

**RESPONSE:**

12.     All documents, including but not limited to electronic mail, discussing, mentioning, or relating to HES jobs where any HES oscillating tool has been used (whether it be domestically in the United States or outside of the United States).

**RESPONSE:**

13.     All documents, including but not limited to electronic mail, discussing, mentioning, or relating to HES' income stream from jobs upon which any HES' oscillating tool was used, including but not limited to gross receipts from the customer, cost of labor, cost of equipment, miscellaneous costs, net profits, mark ups, royalties paid, and cost of purchase of any HES oscillating tool.

**RESPONSE:**

14.     All documents, including but not limited to electronic mail, discussing, mentioning, or relating to HES' purchase of DFI oscillating tools, including but not limited to, date of purchase, inventory volumes, when each tool was used and/or what project.

**RESPONSE:**

15.    All documents, including but not limited to electronic mail, discussing, mentioning, or relating to HES' sale of DFI's oscillating tool to third parties, including but not limited to, identity of the tool, date of purchase from DFI, date of sale, customer sold to, project in which DFI tool was used, sale price, and any royalties retained.

**RESPONSE:**

16.    All documents, including but not limited to electronic mail, discussing, mentioning, or relating to HES' income stream from jobs upon which DFI's oscillating tool was used, including but not limited to gross receipts from the customer, cost of labor, cost of equipment, miscellaneous costs, net profits, mark ups, royalties paid, and cost of purchase of the DFI oscillating tool.

**RESPONSE:**

17.    All documents, including but not limited to electronic mail, discussing, mentioning, or relating to HES' purchase of HES oscillating tools, including but not limited to, date of purchase, inventory volumes, when each tool was used and/or what project.

**RESPONSE:**

18.    All documents, including but not limited to electronic mail, discussing, mentioning, or relating to HES' sale of HES oscillating tool to third parties, including but not limited to, identity of the tool, date of purchase from HES, date of sale, customer sold to, project in which HES' tool was used, sale price, and any royalties retained.

**RESPONSE:**

19.    Please produce a copy of all artwork HES has used to identify, market, or develop the HES oscillating tool.

**RESPONSE:**

20.    Please produce a copy of all case studies which HES has performed, developed, created, analyzed, used to market, explain, or sale the HES oscillating tool.

**RESPONSE:**

21.    Samples of each version, model, or prototype of each and every oscillating tool designed, manufactured, tested, used, marketed, sold, or licensed by HES from January 1, 2002 until the present.

**RESPONSE:**

10

22.     Schematic diagram showing all components of each part, component list, component daily sheets, product specifications, product theories of operation, product design requirements, hardware design specifications, software design specifications, and source codes (if any), documentation for source codes such as manuals, textural descriptions, and source code with a programmer comments for each oscillating tool sold, offered for sale, manufactured or developed by HES since January 1, 2002.

**RESPONSE:**

23.     Schematic diagram showing all components of each part, component list, component data sheets, product specifications, product theories of operation, product design requirements for each mechanical part or device and documentation for operation of the mechanical parts or devices, such as manuals and textural descriptions for each HES oscillating tool sold, offered for sale, manufactured or developed since January 1, 2002.

**RESPONSE:**

24.     A written specification (i.e., the manufacturer and identifying part numbers) of the HES oscillating tool, as well as any DFI oscillating tool manufactured by HES.

**RESPONSE:**

25.     For each HES oscillating tool and DFI oscillating tool, a history of any and all revisions to the design, manufacturing process, use application, and/or function.

**RESPONSE:**

26.     Any and all documents and things which relate to or evidence the conception, development, design and/or manufacture of each model (if more than one) of the HES oscillating tool manufactured, sold, offered for sale, or designed by HES.

**RESPONSE:**

27.     Any document sufficient to identify the manufacturer, brand name, and supplier of any component parts of the HES oscillating tool or any DFI oscillating tool manufactured by HES.

**RESPONSE:**

28.     Any documents relating to testing or analysis of effectiveness of the HES oscillating tool for any oilfield related application.

**RESPONSE:**

29.     Any agreements, invoices, correspondence (including e-mail) with any third party entity or individual who prepared or supplied component parts for the HES oscillating tool or the DFI oscillating tool if manufactured by HES.

**RESPONSE:**

30.     All strategic plans and/or planning documents, business plans, and all related documents and studies generated relating to the HES oscillating tool and DFI oscillating tool.

**RESPONSE:**

31.     All market summaries, assessments, review, analysis studies, and/or comments including but not limited to: market projections and market projection models, projected market penetration and market share studies, market surveys, focus group studies, customer satisfaction surveys, and competitive position analyses for the HES oscillating tool or DFI oscillating tool market in total, and for segments of the HES oscillating tool or DFI oscillating tool market, for the period January 1, 2002 to present.

**RESPONSE:**

32.     With respect to the HES oscillating tool or DFI oscillating tool manufactured by or for Plaintiff since January 1, 2002, summaries and other documents sufficient to separately identify,
    (a)     date and quantity of each tool sold, and/or offered for sale;
    (b)     costs (fixed and variable) of manufacturing for each HES oscillating tool or DFI oscillating tool;
    (c)     costs of shipping for each HES oscillating tool or DFI oscillating tool;
    (d)     costs of advertising for each HES oscillating tool or DFI oscillating tool;
    (e)     identity and location of each manufacturing facility for each HES oscillating tool or DFI oscillating tool;
    (f)     identity of customers for each HES oscillating tool or DFI oscillating tool.

**RESPONSE:**

33.     With respect to sales and offers of sale of HES oscillating tool or DFI oscillating tool, summaries and other documents sufficient to ascertain, for each tool, the:
    (a)     order date;
    (b)     shipping and invoice date;
    (c)     identity of the model of tool shipped;
    (d)     price charged to the immediate customer of each tool;
    (e)     gross and net margin realized on sale s of each tool; and
    (f)     fixed and variable cost of each tool.

**RESPONSE:**

34.   All documents and other information relating to strategy and approach for marketing and selling HES oscillating tools or DFI oscillating tools for the period January 1, 2002 to present.

**RESPONSE:**

35.   All documents and other information relating to Plaintiff's Board of Directors and/or management's review, analysis, evaluation, assessments, and/or comments on either its strategic plan and sales and marketing strategies and approaches for the sale and/or marketing of the HES oscillating tool or DFI oscillating tool for the period January 1, 2002 to the present.

**RESPONSE:**

36.   All documents and other information relating to Plaintiff's identification, review, analysis, evaluation, assessments, studies, summaries, and/or comments regarding competitors in the HES oscillating tool or DFI oscillating tool market for the period January 1, 2002 to the present.

**RESPONSE:**

37.   All documents and other information that identify HES oscillating tools including but not limited to customer profile reports for the period January 1, 2002 to the present.

**RESPONSE:**

38.   All documents and other information related to Plaintiff's distribution of HES oscillating tools, including but not limited to, product distribution strategy reports, sales by distribution channel, and market share by distribution channel, for he period January 1, 2002 to the present.

**RESPONSE:**

39.   All documents and other information related to customer complaints and/or HES oscillating tool or DFI oscillating tool returns for the period January 1, 2002 to the present.

**RESPONSE:**
40.   All documents disclosing, referring or relating to how many HES oscillating tools or DFI oscillating tools have been (1) manufactured; and (2) sold since January 1, 2002 including,

but not limited to, documents enabling the differentiation of the type, series or model of HES oscillating tools or DFI oscillating tools manufactured and/or sold.

**RESPONSE:**

41.    All documents, including but not limited to, spreadsheets which disclose, refer, or relate to the selling price, manufacturing costs, sales cost, general and administrative expense, gross profit and/or net profits for each HES oscillating tool or DFI oscillating tool which has been manufactured, sold or offered for sale since January 1, 2002.

**RESPONSE:**

42.    The following documents for the production for the "Optimization Segment" of HES:
    (a)    income tax statements;
    (b)    balance sheets;
    (c)    cash flow statements;
    (d)    accounting notes;
    (e)    periodic financial reports;
    (f)    planning reports;
    (g)    cost estimations; and
    (h)    projections and forecasts.

**RESPONSE:**

43.    Documents reflecting correspondence from clients or customers or prospective clients or customers of Plaintiff soliciting, suggesting or confirming orders for HES oscillating tools or DFI oscillating tools since January 1, 2002.

**RESPONSE:**

44.    All documents that relate or refer to, illustrate or depict any market study, case study, or analysis performed for or commissioned for HES oscillating tools.

**RESPONSE:**

45.    All documents and other information relating to HES oscillating tools or DFI oscillating tools marketing and/or sales literature including brochures, flyers, bulletins, advertisements (including television advertisements), pamphlets, catalog entries, product announcements, product descriptions, and other documents.

**RESPONSE:**

46.    All documents and other information relating to any person(s) comments on the features and performance of HES oscillating tools or DFI oscillating tools.

**RESPONSE:**

47.    All documents and other information relating to any conference, seminar, demonstration, sales show, convention, marketing session, training session, testing, or other presentation, whether public or private, at which HES oscillating tools or DFI oscillating tools were described, disclosed, displayed, demonstrated, or tested from January 1, 2002 to the present.

**RESPONSE:**

48.    All documents and other information relating to any comparison, examination, evaluations, analyses, studies, or discussions of HES oscillating tools or DFI oscillating tools sold by competitors.

**RESPONSE:**

49.    In the time period January 1, 2002 to the present, all price lists, sales brochures and advertising material which relate to, depict or illustrate HES oscillating tools or DFI oscillating tools.

**RESPONSE:**

50.    All documents and other information relating to pricing strategies for HES oscillating tools including, but not limited to, the factors, information, and/or data that HES considered in developing its pricing strategy for the period January 1, 2002 to the present.

**RESPONSE:**

51.    All documents and other information created and/or sanctioned by HES relating to either HES' Board of Directors and/or management review, analysis, evaluation, assessments, and/or comments on HES oscillating tools pricing strategies and required, expected, and/or actual rate of return for the period January 1, 2009 to the present.

**RESPONSE:**

52.    All documents and other information created and/or sanctioned by HES relating to either HES' Board of Directors and management review, analysis, evaluation, assessments, and/or comments on HES oscillating tools pricing strategies and required, expected, and/or actual rate of return for the period January 1, 2002 to the present.

**RESPONSE:**

53.    All documents and other information including, but not limited to, pricing policies, guidelines, and/or memorandum, relating to how HES determines prices for HES oscillating

tools, and the amount or percentage of profit and/or margin that is included in its prices, for the period January 1, 2002 to the present.

**RESPONSE:**

54.    All documents and other information including, but not limited to studies, strategic plans, forecasts, projections, budgets, and other documents relating to HES' expectations for the HES oscillating tool prices, sales, costs, profits, profit margins, and cash flow in total and on a product by product basis for all HES oscillating tools, during the period January 1, 2002 to the present.

**RESPONSE:**

55.    All documents which relate or refer to HES' plans and strategy for marketing HES oscillating tools.

**RESPONSE:**

56.    All documents and other information that identify all of the factors that HES considers in determining the price of HES oscillating tools, and/or the profit margin that will be included in its HES oscillating tools, for the period January 1, 2002 to the present.

**RESPONSE:**

57.    All documents and other information, including but not limited to financial statements, internal management reports, project management reports, or other reports or memoranda relating to projected and actual profit and profit margins by HES oscillating tools or DFI oscillating tools, both in total and on a product by product basis during the period January 1, 2002 to the present.

**RESPONSE:**

58.    All documents and other information that identifies discount programs and policies (e.g., quantity, package, promotional and/or other discounts), the procedures/guidelines for administering any discount programs and policies, and how HES considers discounts in determining the price and/or profit margin of HES oscillating tools that will be included in its price for the period January 1, 2002 to the present.

**RESPONSE:**

59.    All documents and other information that identifies how HES analyzes and estimates subcontractor costs in determining the price and/or the profit margin of the HES oscillating tool for the period January 1, 2002 to the present.

**RESPONSE:**

60.    All documents and other information that identify either standard payment terms, how HES analyzes proposed payment terms, and how Defendant considers payment terms in determining the price and/or the profit margin of HES oscillating tools for the period January 1, 2002 to the present.

**RESPONSE:**

61.    All documents and other information that identify how HES estimates freight, customs, and duty costs, and how HES considers freight, customs, and duty costs in determining the price and/or the profit margin for its HES oscillating tools, for the period January 1, 2002 to the present.

**RESPONSE:**

62.    All documents and other information that identify how HES manages, analyzes, and estimates foreign exchange rates, risk, exposure, and cost and how HES considers foreign exchange rates, risk, exposure, and cost in determining the price and/or the profit margin for its HES oscillating tools, for the period January 1, 2002 to the present.

**RESPONSE:**

63.    All documents and other information that identify how HES manages, analyzes, and estimates inflation/cost escalation risk, exposure, and cost and how HES considers inflation/cost escalation risk, exposure, and cost in determining the price and/or the profit margin for its HES oscillating tools for the period January 1, 2002 to the present.

**RESPONSE:**

64.    All documents and other information that identify how HES analyzes and estimates product evaluation and testing requirements and costs and how HES considers product evaluation and testing costs in determining the price and/or profit margin, for the period January 1, 2002 to the present.

**RESPONSE:**

65.    All documents and other information that identify how HES analyzes and estimates defective product occurrences and costs and how HES considers defective product occurrences and costs in determining the price and/or the profit margin for its HES oscillating tools for the period January 1, 2002 to the present.

**RESPONSE:**

66.    All documents and other information that identifies how HES analyzes market conditions and how HES considers market conditions in determining the price and/or the profit margin for its HES oscillating tools for the period January 1, 2002 to the present.

**RESPONSE:**

67.    All documents and other information that identify how HES identifies and analyzes potential and/or actual competition and how HES considers potential and/or actual competition in determining the price and/or the profit margin for its HES oscillating tools for the period January 1, 2002 to the present.

**RESPONSE:**

68.    All documents and other information that relates to Defendant's evaluation of the prices vs. quantity trade-off (i.e., elasticity of demand studies) and how this information is used in determining the price and/or the profit margin of HES oscillating tools for the period January 1, 2002 to the present.

**RESPONSE:**

69.    All documents and other information that identify how HES analyzes, estimates and/or projects the expected future market for HES oscillating tools, and how HES projects and considers the expected future market and market conditions in determining the price and/or profit margin that will be incldued in HES oscillating tools, for the period January 1, 2002 to the present.

**RESPONSE:**

70.    Annual and quarterly reports, income statements, balance sheets, and statements of cash flow on a monthly, quarterly and annual basis (both audited and unaudited) and on both an overall and product line basis) for HES' Research and Development Department for the period January 1, 2002 to the present.

**RESPONSE:**

71.    Annual and quarterly reports, income statements, balance sheets, and statements of cash flow on a monthly, quarterly and annual basis (both audited and unaudited) and on both an overall and product line basis) for HES' Production Optimization Segment for the period January 1, 2002 to the present.

**RESPONSE:**

72.    All documents and information related to product profitability analyses for HES oscillating

tools including all documents and information used to prepare any product profitability analyses, for the period January 1, 2002 to the present.

**RESPONSE:**

73.    All documents and other information relating to comparisons of HES oscillating tools' market share, unit volume, prices, sales, costs, profits, profit margins, and cash flow projections, forecasts, plans, and/or budgets to its actual performance for the period January 1, 2002 to the present.

**RESPONSE:**

74.    All documents and information related to a financial analysis including, but not limited to, financial ratio analysis, cash flow analysis, accounts payable aging reports and analysis, accounts receivable aging reports and analysis, inventory reports and analysis, working capital analysis and requirement, and valuations for HES oscillating tools for the period January 1, 2002 to the present.

**RESPONSE:**

75.    All documents and other information relating to the rate of return that HES is required to and/or expects to realize from its business in total and its HES oscillating tools business for the period of January 1, 2002 to the present.

**RESPONSE:**

76.    All documents and information related to overhead accounts, including but not limited to overhead account composition, allocation rates, and allocation bases, for the period January 1, 2002 to the present.

**RESPONSE:**

77.    All documents and other information relating to engineering and manufacturing structure and actual and planned manufacturing and engineering activity in total for the HES oscillating tool or its product line for the period January 1, 2002 to the present.

**RESPONSE:**

78.    All documents and other information relating to sales, marketing and distribution structure, and actual and planned sales, marketing, and distribution activity in total and for the HES oscillating tools or its product line for the period January 1, 2002 to the present.

**RESPONSE:**

79.     All documents and other information relating to sales, marketing and distribution capacity in total and for the HES oscillating tool or product line for the period January 1, 2002 to the present.

**RESPONSE:**

80.     All documents and other information relating to financial activity, and capacity for the HES oscillating tool for the period January 1, 2002 to the present.

**RESPONSE:**

81.     All documents and other information that demonstrate, report, summarize, or otherwise address demand for HES oscillating tools or DFI oscillating tools and products which incorporate oscillating tool technology for the period January 1, 2002 to the present.

**RESPONSE:**

82.     All documents and other information that identifies all available or potentially available technology (whether acceptable or unacceptable) to HES' patented technology in this suit, including samples of such alternative technology.

**RESPONSE:**

83.     All documents and other information relating to policies and/or marketing programs established to license the HES oscillating tool or DFI oscillating tool for the period January 1, 2002 to the present.

**RESPONSE:**

84.     All documents and other information relating to negotiations and/or discussions that took place between Defendant and any non-affiliated business entity or individual concerning the licensing and/or possible licensing of technology used in the HES oscillating tool or DFI oscillating tool for the period January 1, 2002 to the present.

**RESPONSE:**

85.     All license and/or purchase agreements executed or amended between HES (as either licensor or licensee) and any other non-affiliated business entity or individual for the period January 1, 2002 to the present, including the License Agreement at issue.

**RESPONSE:**

86.     All documents and other information that identify alleged comparable license agreements, reports how they are comparable to the technology in this suit, and demonstrate, or otherwise support the position that the license agreements are comparable to the technology in light of the HES patent(s).

**RESPONSE:**

87.     All documents and other information related to royalties received and paid by HES for technologies licensed-in or licensed-out, including but not limited to information that identifies the effective license date, the name of product embodying the technology, the royalty rate, the total royalties paid or received, and the royalty base.

**RESPONSE:**

88.     All valuation and/or appraisal reports (both internal and/or third party) created or amended regarding the valuation of any intellectual property assets held by HES for the period January 1, 2002 to the present for the oscillating tool technology.

**RESPONSE:**

89.     All documents and other information relating to the research, development, and/or design costs associated with these HES oscillating tools being marketed and/or sold by HES.

**RESPONSE:**

90.     All documents which refer or relate to licenses entered into by HES, either as a licensor or licensee, which involve or relate to oscillating tool technology.

**RESPONSE:**

91.     To the extent not otherwise produced, all patent license agreements, contracts, or negotiations for license which HES contends are relevant to this suit.

**RESPONSE:**

92.     All documents which include, refer, relate to or give rise to a license to manufacture, use, sell or offer to sell any HES oscillating tool which may fall within the scope of one or more claims of HES patents.

**RESPONSE:**

93.     All documents which reflect, refer, relate to or are alleged to support any and all bases, asserted or relied upon, by HES to avoid/defend/excuse liability in this cause related to DFI's

counterclaim.

**RESPONSE:**

94.    All documents which reflect, refer, relate to or are alleged to support any and all claims asserted by HES in this action.

**RESPONSE:**

95.    Any insurance agreement or policy under which any person or entity carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action against HES to indemnify or reimburse HES for payments made to satisfy the judgment.

**RESPONSE:**

96.    All documents related in any way to the subject matter of this action which were prepared by each person which HES may or will call as an expert witness at trial in this case.

**RESPONSE:**

97.    All documents related in any way to the subject matter of this action which were reviewed by each person which HES may or will call as an expert witness at trial in this case.

**RESPONSE:**

98.    All documents and things identified in, referred to or relied upon in HES' responses to any of DFI's Interrogatories.

**RESPONSE:**

99.    All documents which are identified and/or referred to in HES' 26(a)(1) disclosure and supplements to this disclosure.

**RESPONSE:**

100.    Any and all documents on which HES relies or intends to rely to support its construction of its claims.

**RESPONSE:**

101.    All documents relating to any web site maintained by or for HES that refers to any HES oscillating tool or DFI oscillating tool.

**RESPONSE:**

102.   All documents which reflect any agreement, or proposed agreement, between Defendant and any other entity to manufacture, sell, offer for sale, lease or license HES oscillating tools.

**RESPONSE:**

103.   All documents relating to, referring to, illustrating or depicting:
   (a)   research and development;
   (b)   product design;
   (c)   product design specifications;
   (d)   product theory of operation;
   (e)   advertising;
   (f)   offers for sale; and
   (g)   sales

   by HES since January 1, 2002 of HES oscillating tools which have been manufactured, sold or offered for sale.

**RESPONSE:**

104.   Any opinions of U.S. or foreign counsel or patent agents related to HES' patents involved in this lawsuit whether DFI or HES patents.

**RESPONSE:**

105.   All documents related to any claim or defense.

**RESPONSE:**

106.   Any Board of Directors meeting minutes since January 1, 2002 that relate to HES' oscillating tools or patents/service marks related to the PULSONIX 200 or PULSONIX TF.

**RESPONSE:**

107.   All documents identified in any interrogatory response.

**RESPONSE:**

108.   All documents which support HES' allegation that DFI is using the Halliburton service marks.

**RESPONSE:**

109.   All documents which support HES' allegation that DFI is using the PULSONIX service marks.

**RESPONSE:**

110.   All documents responsive to HES' allegations in paragraph 19 that HES used its service marks "on advertising and other literature associated with the performance of services using the tools."

**RESPONSE:**

111.   A legible copy of all exhibits attached to HES' First Amended Complaint.

**RESPONSE:**

112.   All documents which support HES' allegations in paragraph 28 of its First Amended Complaint which establish ALL instances where DFI illegally used HES' service or trademarks.

**RESPONSE:**

113.   All documents which support HES' allegations in paragraph 35 of its Amended Complaint establishing damages arising out of DFI's use of Halliburton's trade or service marks.

**RESPONSE:**

114.   Produce all correspondence and documents, including e-mail, by and between personnel with HES and personnel with DFI.

**RESPONSE:**

115.   All documents which support HES' claims in Count I of its First Amended Complaint, including liability and damage arising out of the cause of action.

**RESPONSE:**

116.   All documents which support HES' claims in Count II of its First Amended Complaint, including liability and damage arising out of the cause of action.

**RESPONSE:**

117.   All documents which support HES' claims in Count III of its First Amended Complaint, including liability and damage arising out of the cause of action.

**RESPONSE:**

118.    All documents which support HES' claims in Count IV of its First Amended Complaint, including liability and damage arising out of the cause of action.

**RESPONSE:**

119.    All documents which support HES' claims in Count VII of its First Amended Complaint, including liability and damage arising out of the cause of action.

**RESPONSE:**

120.    All documents which support HES' claims in Count VIII of its First Amended Complaint, including liability and damage arising out of the cause of action.

**RESPONSE:**

121.    Document retention policies, documents identifying documents responsive to the foregoing Requests for Production that were destroyed and any logs or indices that would identify documents responsive to the foregoing Requests for Production, including any archived documents.

**RESPONSE:**

122.    All documents, including but not limited to electronic mail, correspondence, memos (whether internal or to a third party), notes, messages, by and between the following individuals and any DFI employee, agent, or representative from January 1, 2002 until the present:

> Mr. David King
> Mr. Don Weinheimer
> Mr. Hampton Fowler
> Mr. Richard Vaclavik
> Mr. John Warren
> Mr. Perry Courville
> Mr. David McCloud
> Mr. Mike Connell
> Mr. Jim Surjaatmadja
> Mr. Roger Schultz
> Mr. Ron Howard
> Mr. Mike Prudhomme
> Mr. James Tucker
> Mr. Jerry Wilke

Mr. John Matthews
Mr. E. D. Webb
Mr. R. L. Schultz
Mr. Mike Marshall
Mr. Robert L. Pipkin
Mardy L. Meadows
Mr. Zeke Peak
Mr. Matthew Montes
Mr. David Natenberg
Mr. Philip D. Nguyen,
Mr. Stephen R. Ingram
Mr. Neil A. Stegent

**RESPONSE:**

123.  All documents, including but not limited to electronic mail, correspondence, memos (whether internal or to a third party), notes, messages, by or amongst HES employees, agents, or directors related to DFI, oscillating technology, or the PULSONIX brand name from January 1, 2002 until the present.   If HES or its counsel believes that anticipation of litigation cuts off the production date for some of these documents, please prepare a privilege log as to the cut off date HES believes is the first date of anticipation of litigation.

**RESPONSE:**

124.  All drawings, blueprints, and/or reproductions of DFI materials and tools.

**RESPONSE:**

125.  All documents related to accounting, including specific details of every job utilizing PULSONIX 200, on non-Halliburton equipment in conjunction with jointed, threaded, and/or non-continuous pipe from January 1, 2002 until the present.

**RESPONSE:**

126.  All documents related to accounting, including specific details of every job utilizing the PULSONIX 200, on Halliburton equipment in conjunction with jointed, threaded, and/or non-continuous pipe from January 1, 2002 until the present.

**RESPONSE:**

127.  All documents showing customer names (including, address, phone, email) where any type of fluidic oscillating tool was used on any Halliburton job/project from January 1, 2002 until the present.

**RESPONSE:**

128. All documents showing contact information for any engineers, supervisors, tool pushers, or field personal for Halliburton or Halliburton's customers where any type of fluidic oscillating tool was used on any Halliburton job/project from January 1, 2002 until the present.

**RESPONSE:**

129. All e-mail sent by or to the Halliburton "call name" or "web name" of HBBK101, whether or not the name is in caps or lower case.

**RESPONSE:**

130. All documents and underlying data (including charts, art works, graphs, photographs, or reference materials) used to write, edit, create the articles or transform them from a writing to a presentation for the following articles:  SPE 93071, SPE 93987, SPE 11452; SPE 89653; and IPTC 11452.

**RESPONSE:**

131. All Price Books used by Halliburton for oscillating tools from January 1, 2002 until the present.

**RESPONSE:**

132. All Price Books used by Halliburton for hydroblast tools from January 1, 2002 until the present.

**RESPONSE:**

133. All documents, including but not limited to invoices, electronic mail, billings, payments received, job costs, internal accounting records related to the job, which discusses, mentions or relates to any HES job where any hydroblast tool has been used from January 1, 2002 until the present.

**RESPONSE:**

134. All documents, including but not limited to invoices, electronic mail, billings, payments received, job costs, internal accounting records related to the job, which discusses, mentions or relates to any HES job where any oscillating tool has been used from January 1, 2002 until the present.

**RESPONSE:**

135.    All documents in HES' possession, custody or control related to Andy Rowe and his position as Global Product Campion, including but not limited, personnel records, payments for commissions, salaries, benefits, expenses, contractor payments and e-mail from January 1, 2002 until the present.

**RESPONSE:**